NEW YORK AIRWAYS, INC., Plaintiff-Appellant,

v.

UNITED STATES of America and The Port of New York Authority, Defendants-Appellees.

UNITED STATES of America, Third-Party Plaintiff,

v.

EASTERN AIRLINES, INC., Third-Party Defendant.

No. 58, Docket 25738.

United States Court of Appeals Second Circuit.

Argued Oct. 11, 1960.

Decided Nov. 1, 1960.

air controller who was stationed in the control tower at the field. The Port of New York Authority, which operates the airport, was named as a codefendant with the United States, Eastern Airlines, Inc., the owner of the truck, was impleaded by the United States as third party defendant and the suit against it was dismissed as well.

The dismissal came at the close of the entire case and was based on the ground that New York Airways had failed to sustain its burden of proving freedom from contributory negligence. The parties had stipulated that the New Jersey law that was applicable was identical with that of New York.

The helicopter was one engaged in a scheduled passenger and baggage service between the Idlewild Airport on Long Island and a designated gate at the Newark Airport. The contemplated touchdown area was in a part of the field where service vehicles passed and repassed. It happened that on the flight in question the only occupants of the helicopter were the pilot and a flight attendant. The pilot flew west from Idlewild and, according to custom, when he was over St. George, Staten Island, radioed the Newark control tower to advise of his position. The air traffic controller told him to report again when he was at a point over the west shore of Newark Bay. At that point the pilot was on a course which would have taken him across north and south runway number 22 of the field some distance to the south of the gate for which he was destined. It was customary for the helicopter pilots to keep on a course to the west and cross this runway and, instead of then turning north on a course which would bring them straight to the predetermined touchdown area, to take a northerly course and then turn east on a course which would take them to the touchdown area. The reason for this was that, because of the design of the helicopter, blind spots are created to the left and in front and thus the normal procedure is to turn or bank to the right "so the pilot can keep the touchdown area in his

---

Gay & Behrens, New York City (Edward J. Behrens and Charles H. Lawson, New York City, of counsel), for plaintiff-appellant.

George Cochran Doub, Asst. Atty. Gen., Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Morton Hollander, Howard E. Shapiro, Attorneys, Department of Justice, Washington, D. C., for defendant-appellee United States of America.

Sidney Goldstein, New York City (Francis X. Curley, New York City, of counsel), for defendant-appellee The Port of New York Authority.

Thomas V. Kingham, New York City (Bernard Meyerson, New York City, of counsel), for third-party appellee Eastern Airlines, Inc.

Before CLARK and FRIENDLY, Circuit Judges, and DIMOCK, District Judge.

DIMOCK, District Judge.

New York Airways, Inc., appeals from a judgment of the United States District Court for the Eastern District of New York dismissing on the merits the suit of New York Airways, Inc., against the United States and the Port of New York Authority. The suit is one to recover damages caused to New York Airways' helicopter when it descended onto an automobile truck while the helicopter was landing at Newark Airport, New Jersey, on October 17, 1953.

The claim against the United States is prosecuted pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., and is based upon alleged negligence of a Civil Aeronautics Authority

vision at all times," as a witness for plaintiff expressed it.

When the pilot, still on his original west course, radioed the tower from his position over the west shore of Newark Bay, the air traffic controller told him to hold on the east side of the field while another aircraft landed on runway 22. The pilot replied that he had time to cross the runway safely and he was therefore authorized to cross to the west side of the runway without waiting for the landing aircraft to pass. After crossing to the west side the helicopter pilot was advised by the tower that he was cleared to land at the gate. The pilot then turned north and proceeded on a descending angle to a point on an east and west line from the touchdown area. At that point he turned east and, in about fifteen seconds of further gliding on an angle, came down on top of the Eastern Air Lines service truck at a point about ten feet to the west of his intended touchdown area. The truck was about ten feet high. It was proceeding at a moderate rate of speed and had made no sudden change of direction. It was not equipped with radio. The pilot had heard nothing from the control tower since his clearance to land. He testified that he did not see the truck until after the impact yet if he had banked his ship to the right so that he could "keep the touchdown area in his vision at all times" he ought to have seen it.

Judge Edelstein made careful and detailed findings of fact including a finding that "the pilot did not engage in maneuvers that would have increased visibility through the blind spots." This and other findings amply supported by the evidence support his conclusion that plaintiff failed to sustain its burden of proving freedom from contributory negligence.

Plaintiff attempts to avoid the effect of Judge Edelstein's finding that the pilot did not so maneuver his helicopter as to increase his visibility through the blind spots by the claim that the pilot was not permitted to approach the touchdown area on anything but what counsel calls a "glide path" and that this glide path did not involve a maneuver to increase visibility through the blind spots. In the portion of the testimony to which counsel refers the witness said merely that the practice and procedure in proceeding at a glide "angle" was to maintain an altitude and airspeed compatible with handling an engine failure at any time. Although there was testimony that the helicopters were not permitted, except in an emergency, to deviate in any way from the pattern established by certain test flights, there was no testimony that it would have been a deviation so to maneuver as to keep the touchdown area in vision at all times. We have been directed to nothing in the record which would impair Judge Edelstein's view that the pilot was free so to guide his ship that he could see where he was landing.

An argument that the pilot had no duty so to maneuver his helicopter as to see where he was landing involves the necessary implication that the flight controller in the tower was the only person who was under a duty to watch the area in which the helicopter was going to land. That implication, in turn, involves the necessary further implication that the established procedure was such as to hazard safety at the touchdown area upon the ability of the flight controller to devote to the state of the ground traffic there whatever attention was necessary to make the area safe despite his obligation to control the landings of all fixed wing airships in the airfield. This is incredible. In this very case the flight controller testified to the necessity of devoting his attention alternately to the helicopter and the airship coming in on runway 22 about which he had alerted the helicopter pilot.

The fact that a pilot who has received a clearance may not fly blind and rely on the flight controller for his eyes is recognized by the statement in the Flight Information Manual issued by the Civil Aeronautics Authority: "In this connection a clearance issued by a tower (such as 'cleared to land') either by radio or visual signal is permissive in nature and does not relieve the pilot from exer-

cising a reasonable degree of caution in executing the provisions of the clearance." It is true that this language is addressed to collisions between aircraft but the standard of a pilot's vigilance must be even higher where the anticipated danger is from ground vehicles which, unlike aircraft, the flight controller cannot warn by radio. Plaintiff's operations manager admitted that he continuously instructed his pilots to survey a landing area where they were going to land to see that it was clear in spite of any clearance they might get from the tower and to observe the landing area at all times.

Any conclusion that it was impossible for the pilot so to maneuver as to have seen the truck would involve the proposition that a helicopter cannot safely glide to an area, where there is likely to be movement of vehicles, without direction from outside. Plaintiff has not gone so far as to make any such claim.

Affirmed.